Mike Arias (CSB #115385)
Mikael H. Stahle (CSB #182599)
**ARIAS SANGUINETTI STAHLE
& TORRIJOS LLP**
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045
Telephone:   (310) 844-9696
Facsimile:   (310) 861-0168
mike@asstlawyers.com
mikael@asstlawyers.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN ALVAREZ, an individual, on behalf of himself and all others similarly situated; SILVIA RICO, an individual, on behalf of herself and all others similarly situated; KATHLEEN KOEHN, an individual, on behalf of herself and all others similarly situated; NICHOLAS RAZO, an individual, on behalf of himself and all others similarly situated, | Case No. CV 16-00630 MWF (MRWx) |
| | **CLASS ACTION** |
| | **FOURTH AMENDED COMPLAINT** |
| Plaintiffs, | 1. **VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CIV. CODE §§ 1750, *ET SEQ.*)** |
| vs. | 2. **VIOLATION OF THE UNFAIR COMPETITION LAW (BUS. & PROF. CODE §§ 17200, *ET SEQ.*)** |
| ASHLEY FURNITURE INDUSTRIES, INC., a Wisconsin corporation; ASHLEY HOMESTORES, LTD., a Wisconsin corporation; and DOES 1 through 100, inclusive, | 3. **VIOLATION OF THE FALSE ADVERTISING LAW (BUS. & PROF. CODE §§ 17500, *ET SEQ.*)** |
| Defendants. | 4. **FRAUDULENT MISREPRESENTATION** |
| | **DEMAND FOR JURY TRIAL** |

**JURISDICTION AND VENUE**

1.     Defendants removed this action to this Court on January 28, 2016, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, from the Los Angeles County Superior Court, which has jurisdiction over this action pursuant to CAL. CODE CIV. PROC. § 410.10.

2.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

**PLAINTIFFS**

3.     The Class that Plaintiffs seek to represent (the "Class") comprise the following persons:  *All persons who purchased furniture with DuraBlend®  upholstery from Defendants in California.*

4.     More than two thirds of the members of the Class are citizens of California.

5.     <u>Plaintiff Juan Alvarez</u>

a.     On or about March 11, 2011, Plaintiff Alvarez purchased from Defendants, at a retail store doing business as "Town Furniture," located at 1053 Hacienda Boulevard in La Puente, California, a sectional sofa and an ottoman, both having brown polyurethane upholstery, for approximately $2,000 (collectively, "Furniture I"), which upholstery had the appearance of leather and therefore led him to reasonably believe it consisted of leather and was of similar quality, strength, and durability as leather.  Plaintiff Alvarez purchased Furniture I from Defendants based on this belief.

b.     Plaintiff Alvarez has continuously owned Furniture I since he bought it and has continuously kept it in his living room for his and his family's normal course of use.  In or about early 2013, Plaintiff Alvarez discovered that the upholstery on Furniture I was peeling, causing pieces and particles of the top leather-appearing layer to come off and exposing the underlying material, which was coarse in texture and off-white in color.  About

Page 2

<u>FOURTH AMENDED COMPLAINT</u>

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

a year later, the brown top layer had almost completely peeled off from the seating surfaces, leaving the seating surfaces to comprise almost exclusively the off-white coarse underlying material and almost none of the leather-appearing top layer with which Furniture I was sold to Plaintiff Alvarez.  The pictures attached hereto as **Exhibit A** show Furniture I in this state.

c.     In or about mid-2014, Plaintiff Alvarez complained to Defendants that Furniture I was peeling and asked that they rectify it.  When Plaintiff Alvarez brought one of the sofa cushions to the store where he had bought it in order to show Defendants what had happened, the salesman told him he could not help him and directed him to contact Defendants at the factory level.  When Plaintiff Alvarez contacted Defendants at the factory level, he was similarly turned away in an e-mail from a "Liz" dated September 27, 2014:

> "Thank you for contacting Ashley Furniture Industries, Inc. in Arcadia, WI. I am sorry to hear that you are experiencing problems with your Ashley furniture. All warranties are handled on the retail level. If this is considered a manufacturing or work-manship defect, ***and*** you purchased your furniture with a warranty, please contact the store where you purchased the furniture." (Emphasis added.)

d.     When Plaintiff Alvarez again sought assistance at the retail level, the salesman was somewhat more accommodating and conceded that Plaintiff Alvarez was not the first customer who had complained about peeling upholstery.  Ultimately, however, the salesman again directed Plaintiff Alvarez to customer service at Defendants' factory level.

e.     When Plaintiff Alvarez again contacted Defendants at the factory level, he first was asked to provide pictures and serial numbers of Furniture I (which he did), but after a months-long wait and many reminders he was once again turned away, this time in an e-mail from a "Mara" dated

**FOURTH AMENDED COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

December 24, 2014:

> "Thank you for contacting Ashley Furniture Industries, Inc. in Arcadia, WI. I am sorry to hear that you are experiencing problems with your Ashley furniture. All warranties are handled on the retail level. If this is considered a manufacturing or work-manship defect, ***and*** you purchased your furniture with a warranty, please contact the store where you purchased the furniture." (Emphasis added.)

f.     To this day, Defendants have failed to provide any remedy for the monetary loss they caused Plaintiff Alvarez by selling him furniture whose upholstery had the appearance of leather and therefore led him to reasonably believe it consisted of leather and was of similar quality, strength, and durability as leather, when in fact it was not.  Had he known the upholstery did not consist of leather or was not of similar quality, strength, and durability as leather, he would not have purchased Furniture I.

6.   Plaintiff Silvia Rico

a.     Plaintiff Rico is a member of the Class identified in Paragraph 3.

b.     On or about July 2, 2011, Plaintiff Rico purchased from Defendants, at a retail store doing business as "Ashley Furniture HomeStore," located at 7410 Carson Boulevard, Long Beach, California, a reclining loveseat and a reclining sofa, both having brown DuraBlend® upholstery, for approximately $1,600 (collectively, "Furniture II"), which upholstery had the appearance of leather and therefore led her to reasonably believe it consisted of leather and was of similar quality, strength, and durability as leather.  Plaintiff Rico purchased Furniture II from Defendants based on this belief.

c.     Plaintiff Rico has continuously owned Furniture II since she bought it and has continuously kept it in her living room for her and her family's normal course of use.  In or about the fall of 2014, Plaintiff Rico

Page 4

**FOURTH AMENDED COMPLAINT**

1   discovered that the DuraBlend® upholstery on Furniture II was peeling,
2   causing pieces and particles of the top leather-appearing layer to come off and
3   exposing the underlying material, which was coarse in texture and off-white in
4   color.  About eight months later, the brown top layer had almost completely
5   peeled off from much of the seating surfaces, leaving several of the surfaces to
6   mostly comprise the off-white coarse underlying material and little of the
7   leather-appearing top layer with which Furniture II was sold to Plaintiff Rico.
8   The pictures attached hereto as **Exhibit B** show Furniture II in this state.

9         d.    In or about early spring of 2015, Plaintiff Rico returned to
10   the same retail store where she had purchased Furniture II from Defendants,
11   this time to buy a dining room table with chairs.  Upon paying for the dining
12   room set, Plaintiff Rico told the salesperson that she had previously bought
13   leather furniture from the store (Furniture II) but that the leather upholstery
14   was peeling.  The salesperson looked up the previous purchase in the computer
15   and told Plaintiff Rico that the furniture she had bought (Furniture II) did not
16   have leather upholstery at all, but rather had DuraBlend® upholstery.  The
17   salesperson explained to Plaintiff Rico that many customers had complained
18   about peeling DuraBlend® upholstery and advised her to contact "corporate."
19   The salesperson further stated that he understood Defendants to be aware of
20   the problems with the DuraBlend® upholstery and the nature of the complaints
21   received from customers about peeling upholstery.

22         e.    In or about the spring of 2015, Plaintiff Rico complained to
23   Defendants that Furniture II was peeling and asked them to rectify it.
24   Defendants refused to address the problem, however, and instead sent Plaintiff
25   Rico $800 worth of gift cards to use in Defendants' stores to buy more Ashley
26   manufactured furniture.

27         f.    To this day, Defendants have failed to provide any remedy
28   for the monetary loss they caused Plaintiff Rico by selling her furniture whose

Page 5

**FOURTH AMENDED COMPLAINT**

DuraBlend® upholstery had the appearance of leather and therefore led her to reasonably believe it consisted of leather and was of similar quality, strength, and durability as leather, when in fact it was not. Had she known the Dura-Blend® upholstery did not consist of leather or was not of similar quality, strength, and durability as leather, she would not have purchased Furniture II.

      7.   <u>Plaintiff Kathleen Koehn</u>

      a.   On or about April 27, 2013, Plaintiff Koehn purchased from Defendants, at a retail store doing business as "Design Center," located at 606 West Katella Avenue, Orange, California, a sectional sofa, having brown polyurethane upholstery, for approximately $650 ("Furniture III"), which upholstery had the appearance of leather and therefore led her to reasonably believe it consisted of leather and was of similar quality, strength, and durability as leather. Plaintiff Koehn purchased Furniture III from Defendants based on this belief.

      b.   Plaintiff Koehn has continuously owned Furniture III since she bought it and has continuously kept it in her living room for her and her family's normal course of use. In or about early 2014, Plaintiff Koehn discovered that the upholstery on Furniture III was peeling, causing pieces and particles of the top leather-appearing layer to come off and exposing the underlying material, which was coarse in texture and off-white in color. By or before the second anniversary of Plaintiff Koehn's having bought Furniture III, the brown top layer had almost completely peeled off from much of the seating surfaces, leaving several of the surfaces to mostly comprise the off-white coarse underlying material and little of the leather-appearing top layer with which Furniture III was sold to Plaintiff Koehn. The pictures attached hereto as **Exhibit C** show Furniture III in this state.

///

///

**FOURTH AMENDED COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

c.      In or about mid-2014, Plaintiff Koehn complained to Defendants that Furniture III was peeling and asked that they rectify it. However, Defendants refused to provide a refund, but offered to reupholster the peeling areas if Plaintiff Koehn paid for it.  When she then contacted the store where she had bought Furniture III and explained what had happened, the salesman declined to provide a refund and told her there was nothing he could do, as this type of furniture was not "designed to last" as much as two years.

d.      To this day, Defendants have failed to provide any remedy for the monetary loss they caused Plaintiff Koehn by selling her furniture whose upholstery had the appearance of leather and therefore led her to reasonably believe it consisted of leather and was of similar quality, strength, and durability as leather, when in fact it was not.  Had she known the upholstery did not consist of leather or was not of similar quality, strength, and durability as leather, she would not have purchased Furniture III.

8.    Plaintiff Nicholas Razo

a.      Plaintiff Razo is a member of the Class identified in Paragraph 3.

b.      On or about October 27, 2013, Plaintiff Razo purchased from Defendants, at a retail store doing business as "Casa Linda Furniture," located at 7510 Firestone Boulevard, Downey, California, a sofa and a loveseat, both having brown DuraBlend® upholstery, for approximately $2,000 (collectively, "Furniture IV"), which upholstery had the appearance of leather and therefore led him to reasonably believe it consisted of leather and was of similar quality, strength, and durability as leather.  Plaintiff Razo purchased Furniture IV from Defendants based on this belief.

c.      Upon delivery of Furniture IV to his home, Plaintiff Razo received along with Furniture IV two identical high-gloss cards, approximately four by six inches in size, each side of which contained a high resolution photo

**FOURTH AMENDED COMPLAINT**

1  depicting a material that had the appearance of leather.  On the front side of

2  the card, the word "DuraBlend" appeared in large bold letters, with additional

3  marketing-style words appearing directly on the photo: "Durable", "Easy

4  Clean", "Sophisticated Look and Feel", and "Excellent Sun-light Resistance",

5  as well as the word "LEATHER" in the lower right corner.  These represent-

6  ations supported the reasonableness of Plaintiff Razo's belief that the Dura-

7  Blend® upholstery consisted of leather and was of similar quality, strength, and

8  durability as leather.  The picture attached hereto as **Exhibit D** shows the front

9  side of the card.

10     d. Most of the back side of the card consisted of the same high

11  resolution photo as the front side, depicting a material that had the appearance

12  of leather.  Above the photo, Defendants represented that DuraBlend® "is a

13  material that contains … leather [but] is not *wholly* the hide of an animal and

14  [not] *100%* leather" (emphasis added).  These representations supported the

15  reasonableness of Plaintiff Razo's belief that the DuraBlend® upholstery

16  consisted of leather and was of similar quality, strength, and durability as

17  leather.  The picture attached hereto as **Exhibit E** shows the back side of the

18  card.

19     e. Attached to Furniture IV were sewn-in tags visible upon

20  removal of the cushions, with the words "DuraBlend" and "blended leather"

21  appearing in large bold letters.  Along with the representations on the cards

22  shown in Exhibits D and E, these representations further supported the reason-

23  ableness of Plaintiff Razo's belief that the DuraBlend® upholstery consisted of

24  leather and was of similar quality, strength, and durability as leather.  The

25  picture attached hereto as **Exhibit F** shows a sewn-in tag attached to Furniture

26  IV.

27     f. Plaintiff Razo has continuously owned Furniture IV since he

28  bought it and has continuously kept it in his living room for him and his

family's normal course of use.  In or about January of 2014, Plaintiff Razo discovered that the DuraBlend® upholstery on Furniture IV was peeling, causing pieces and particles of the top leather-appearing layer to come off and exposing the underlying material, which was coarse in texture and off-white in color.  The pictures attached hereto as **Exhibit G** show Furniture IV in this state.  From then on, Plaintiff Razo kept Furniture IV covered by blankets so as to avoid further peeling.

g.  In or about mid-2014, Plaintiff Razo complained to Defendants that Furniture IV was peeling and asked that they rectify it.  When Plaintiff Razo contacted the store where he had bought Furniture IV and explained what had happened and requested a refund, the salesman directed him to contact Defendants at the factory level.  When Plaintiff Razo did so, Defendants told him they would look into the problem and get back to him, which they never did despite his requests that they do so.

h.  To this day, Defendants have failed to provide any remedy for the monetary loss they caused Plaintiff Razo by selling him furniture whose DuraBlend® upholstery had the appearance of leather and therefore led him to reasonably believe it consisted of leather and was of similar quality, strength, and durability as leather, when in fact it was not.  Had he known the DuraBlend® upholstery did not consist of leather or was not of similar quality, strength, and durability as leather, he would not have purchased Furniture IV.

## CLASS ALLEGATIONS

9.  The persons who comprise the Class are so numerous that joinder with all such persons is impracticable and the disposition of their claims will benefit the parties and the Court.  The claims of Plaintiffs are typical of the claims of the Class.  Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs do not have any interests that are antagonistic to the

**FOURTH AMENDED COMPLAINT**

Class.  Counsel for Plaintiffs are experienced, qualified, and generally able to conduct complex class action litigation.

10.    This Court should permit this action to be maintained as a class action pursuant to FED. R. CIV. P. 23 and/or CAL. CODE CIV. PROC. § 382 for the following reasons:

a.    The questions of law and fact common to the Class predominate over any question affecting only individual members;

b.    A class action is superior to any other available method for the fair and efficient adjudication of the claims of the members of the Class;

c.    The members of the Class are so numerous that it is impractical to bring all members of the Class before the Court;

d.    Plaintiffs and the other members of the Class will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

e.    There is a community of interest in obtaining appropriate legal and equitable relief for the common law and statutory violations and other improprieties alleged herein, as well as in obtaining adequate compensation for the damages and injuries for which Defendants are responsible in an amount sufficient to adequately compensate the members of the Class for the injuries sustained;

f.    Without class certification, the prosecution of separate actions by individual members of the Class would create a substantial risk of the following:

i.    Inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants, and/or

ii.    Adjudications with respect to the individual members that would, as a practical matter, be dispositive of the interests of other

**FOURTH AMENDED COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests, including but not limited to the potential for exhausting the funds available from those parties who are, or may be, responsible Defendants; and

g.     Defendants have acted, or refused to act, on grounds that are generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

## **DEFENDANTS**

11.    Plaintiffs are informed and believe, and based on that information and belief allege, that Defendant Ashley Furniture Industries, Inc., ("Ashley Furniture") is, and at all relevant times herein mentioned was:

a.    A duly organized Wisconsin corporation; and

b.    Duly qualified to conduct business, and conducting business, in the State of California, including the County of Los Angeles.

12.    Plaintiffs are informed and believe, and based on that information and belief allege, that Defendant Ashley HomeStores, Ltd., ("Ashley HomeStores") is, and at all relevant times herein mentioned was:

a.    A duly organized Wisconsin corporation; and

b.    Duly qualified to conduct business, and conducting business, in the State of California, including the County of Los Angeles.

13.    The true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of Defendants Does 1 through 100, inclusive ("Doe Defendants"), are unknown to Plaintiffs who therefore sue these Doe Defendants by such fictitious names pursuant to CAL. CODE CIV. PROC. § 474. Plaintiffs will seek leave to amend this complaint to allege their true names and capacities when they are ascertained.

14.    Plaintiffs are informed and believe, and based on that information and belief allege, that each of the Defendants named in this complaint,

**FOURTH AMENDED COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

including each of the Doe Defendants, is responsible in some manner for one or more of the events and happenings, and proximately caused the injuries and damages, hereinafter alleged.

15.     Plaintiffs are informed and believe, and based on that information and belief allege, that each of the Defendants named in this complaint, including each of the Doe Defendants (collectively, "Defendants"), is, and at all relevant times herein mentioned was, the agent, servant, and/or employee of each of the other Defendants, and that each Defendant was acting within the course and scope of his, her, or its authority as the agent, servant, and/or employee of each of the other Defendants.  Consequently, each Defendant is jointly and severally liable to Plaintiffs and the other members of the Class for the losses sustained as a proximate result of their conduct.

## BACKGROUND ALLEGATIONS

16.     Defendants Ashley Furniture and Ashley HomeStores (collectively "Defendants" or "Ashley") have at all relevant times herein mentioned been engaged in the manufacture and sale of residential furniture.  Established in 1945, Ashley holds itself out as the largest furniture manufacturer and retailer in the world, with over 500 retail outlets in 123 countries, including the United States and Canada.

17.     In or about April of 2008, Ashley began incorporating an upholstery product into some of its furniture, including sofas, loveseats, sectionals, and ottomans, which it marketed as "blended leather upholstery" under the trade name DuraBlend®.  According to the online encyclopedia WikiPedia.com, "blended leather" is synonymous with "bonded leather," a man-made material that incorporates leather scraps and fiber and mimics the appearance of leather:

///

///

**FOURTH AMENDED COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

> Bonded leather … is a term used for a man-made upholstery material made as a layered structure of a fiber or paper backer, a pulp made from shredded leather, and a polyurethane coating which may be embossed with a leather-like texture. Bonded leather is made by shredding leather scraps and leather fiber, then mixing it with bonding materials. The mixture is next extruded onto a fiber cloth, or paper backing, and the surface is usually embossed with a leather-like texture or grain. Color and patterning, if any, are a surface treatment that does not penetrate like a dyeing process would. The natural leather fiber content of bonded leather varies. The manufacturing process is somewhat similar to the production of paper.
>
> Lower-quality materials may suffer flaking of the surface material in as little as a few years, while better varieties are considered very durable and retain their pattern and color even during commercial use. Because the composition of bonded leathers and related products varies considerably (and sometimes is a trade secret), it may be difficult to predict how a given product will perform over the course of time. There is a wide range in the longevity of bonded leathers and related products; some better-quality bonded leathers are claimed to be superior in durability over low-quality genuine leather.

(See https://en.wikipedia.org/wiki/Bonded_leather. Footnotes omitted.)

18.    At all relevant times, Ashley marketed and sold the DuraBlend® upholstery, which to a reasonable consumer had the appearance of leather and therefore led him/her to reasonably believe it consisted of leather and was of similar quality, strength, and durability as leather. Ashley further marketed the DuraBlend® upholstery as "blended leather," using various monikers such as "Durable", "Easy Clean", "Sophisticated Look and Feel", and "Excellent Sunlight Resistance", as well as the word "LEATHER" in its own right, further supporting the reasonableness of the reasonable consumer's belief that the DuraBlend® upholstery consisted of leather and was of similar quality, strength, and durability as leather.

19.    As a result, Plaintiffs and the other members of the Class were

FOURTH AMENDED COMPLAINT

deceived into purchasing furniture from Ashley with upholstery that, contrary to their reasonable beliefs and expectations, in fact did not consist of leather or was not of similar quality, strength, and durability as leather, instead being of such inferior quality, strength, and durability as to not hold up to normal wear and tear and begin to peel or disintegrate within a short period of time.

## TOLLING OF STATUTES OF LIMITATION

20.    Any and all applicable statutes of limitation have been tolled by the fact that Plaintiffs and the other members of the Class were deceived into purchasing furniture from Ashley with upholstery that, contrary to their reasonable beliefs and expectations, in fact did not consist of leather or was not of similar quality, strength, and durability as leather.  Plaintiffs and the other members of the Class could not reasonably have discovered this fact until the DuraBlend® upholstery began to peel or disintegrate, as described herein.  Any and all statutes of limitation otherwise applicable have therefore been tolled by operation of the discovery rule with respect to all claims alleged herein on behalf of Plaintiffs and the other members of the Class.

21.    Based on Defendants' deception of Plaintiffs and the other members of the class, as described herein, Defendants are further estopped from relying on any statutes of limitation in defense of this action.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

### [Civil Code §§ 1750, *et seq.*]

### (By Plaintiffs and the Class Against all Defendants)

22.    Plaintiffs reallege and incorporate herein by reference, as though fully set forth herein, paragraphs 1 through 21, inclusive, of this complaint.

23.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (Civ. Code §§ 1750, *et seq.*) ("CLRA") because Defendants'

**FOURTH AMENDED COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods to consumers.

24. Plaintiffs and the other members of the Class are consumers as defined by Civil Code section 1761(d).

25. The furniture with the DuraBlend® upholstery that Defendants sold to Plaintiffs and the other members of the Class ("Class Furniture") are "goods" as defined in Civil Code section 1761(a).

26. Defendants violated the CLRA in at least the following respects:

a. In violation of Civil Code section 1770(a)(5), Defendants represented that the Class Furniture had characteristics, ingredients, uses, and benefits which it does not have;

b. In violation of Civil Code section 1770(a)(7), Defendants represented that the Class Furniture was of a particular standard, quality, or grade, when in fact the Class Furniture was of lesser standard, quality, and grade;

c. In violation of Civil Code section 1770(a)(9), Defendants advertised the Class Furniture with the intent not to sell it as advertised; and

d. In violation of Civil Code section 1770(a)(16), Defendants represented that the Class Furniture had been supplied in accordance with a previous representation, when it had not.

27. Defendants knew, or should have known, that the representations made in their marketing of the DuraBlend® upholstery were false and misleading.

28. Plaintiffs and the other members of the Class have been harmed and continue to be threatened with harm as a direct and proximate result of Defendants' actions in violation of the CLRA.

29. Plaintiffs, on behalf of themselves and the other members of the Class, seek an order from this Court under Civil Code section 1780(a)(2) enjoining Defendants from continuing to engage in the practices described in

FOURTH AMENDED COMPLAINT

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

this complaint and a declaration that Defendants' conduct violates the CLRA. Without such an order, Plaintiffs and the other members of the Class will continue to be harmed and threatened with harm as a direct and proximate result of Defendants' action in violation of the CLRA.  Moreover, without such an order, Plaintiffs and the other members of the Class will have no assurance that furniture sold by Defendants with upholstery that has the appearance of leather, or is otherwise represented to be or contain leather, in fact is leather, contains leather, or is of similar quality, strength, and durability as leather.

30.    On April 15, 2016, Plaintiffs Koehn and Razo, by their counsel, notified Defendants in writing by certified mail, return receipt requested, of Defendants' particular violations of the CLRA and demanded that Defendants correct said violations.    More than 30 days have passed, however, since Defendants received Plaintiffs' notices, and Defendants have not given Plaintiffs or the other members of the Class, nor agreed to give Plaintiffs or the other members of the Class, an appropriate correction, repair, replacement, or other remedy.

31.    As a direct and proximate result of Defendants' violations of the CLRA, Plaintiffs and the other members of the Class have been damaged in an amount according to proof at trial.

32.    Defendants acted maliciously, wantonly, oppressively, deliber-ately, and with reckless disregard of the rights of Plaintiffs and the other members of the Class.  Therefore, Defendants' conduct rises to a level that warrants the award of punitive damages in an amount sufficient to deter such conduct in the future, pursuant to Civil Code sections 1780 and 1782(b).

33.    The affidavit of venue attached hereto as **Exhibit H** satisfies Civil Code section 1780(d).

///

///

**FOURTH AMENDED COMPLAINT**

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE UNFAIR COMPETITION LAW**

**[BUS. & PROF. CODE §§ 17200, *et seq.*]**

**(By Plaintiffs and the Class Against all Defendants)**

34.     Plaintiffs reallege and incorporate herein by reference, as though fully set forth herein, paragraphs 1 through 33, inclusive, of this complaint.

35.     Defendants fall within the definition of "person" under Business & Professions Code section 17021.

36.     Plaintiffs have standing to pursue this cause of action, as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendants' actions as described herein.

37.     Defendants' conduct, as alleged and described herein, constitutes unlawful, unfair, and/or fraudulent business practices in violation of Business and Professions Code sections 17200, *et seq.*

38.     Defendants' business practices, as alleged and described herein, violate the "unfair" prong of Business & Professions Code sections 17200, *et seq.* because: (i) the injury to Plaintiffs and the other members of the Class was substantial in that they were deceived into purchasing furniture from Ashley with upholstery that, contrary to their reasonable beliefs and expectations, in fact did not consist of leather or was not of similar quality, strength, and durability as leather; (ii) the gravity of the injury that Defendants' deception imposed on Plaintiffs and the other members of the Class significantly outweighed the utility of the deception; and (iii) the injury suffered by Plaintiffs and the other members of the Class as a result of Defendants' deception is not one that Plaintiffs and the other members of the Class could reasonably have avoided.

///

///

**FOURTH AMENDED COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

39.     Defendants' business practices, as alleged and described herein, violate the "unlawful" prong of Business & Professions Code sections 17200, *et seq.* because the they violate the CLRA, as alleged and described herein.

40.     Defendants' business practices, as alleged and described herein, violate the "fraudulent" prong of Business & Professions Code section 17200, *et seq.* because they are likely to deceive a reasonable consumer.

41.     Accordingly, Defendants violated, and continues to violate, the proscription under Business & Professions Code section 17200 against engaging in unlawful, unfair, and fraudulent business acts and practices.

42.     As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiffs and the other members of the Class have suffered injury in fact and lost money or property, in that they overpaid for the Class Furniture and purchased Class Furniture that they otherwise would not have purchased.

43.     Pursuant to Business and Professions Code section 17203, Plaintiffs and the other members of the Class seek an order of this Court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those acts alleged in this complaint.

44.     Plaintiffs and the other members of the Class also seek an order requiring Defendants to make full restitution of all monies they wrongfully obtained from Plaintiffs and the other members of the Class.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE FALSE ADVERTISING LAW
### [BUS. & PROF. CODE §§ 17500, *et seq.*]
### (By Plaintiffs and the Class Against all Defendants)

45.     Plaintiffs reallege and incorporate herein by reference, as though fully set forth herein, paragraphs 1 through 44, inclusive, of this complaint.

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

46.    Business & Professions Code section 17500 provides that, "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

47.    Defendants directly disseminated or caused to be disseminated statements in California in advertisements, marketing materials, and other publications, including on Defendants' website, suggesting that the Dura-Blend® upholstery had the appearance of leather, consisted of leather, and was of similar quality, strength, and durability as leather, when if fact it was not. Defendants further marketed and advertised the DuraBlend® upholstery as "blended leather," using various monikers such as "Durable", "Easy Clean", "Sophisticated Look and Feel", and "Excellent Sunlight Resistance", as well as the word "LEATHER", which statements were (1) untrue and/or misleading, (2) known, or with the exercise of reasonable care should have been known, to Defendants to be untrue and/or misleading to consumers, including Plaintiffs and the other members of the Class, and (3) material and likely to deceive a reasonable consumer, including Plaintiffs and the other members of the Class.

48.    Plaintiffs and the other members of the Class have suffered injury in fact, including the loss of money and/or property, as a result of Defendants' untrue and/or misleading statements regarding the Class Furniture, which statements constitute unfair, deceptive, untrue, and/or misleading advertising in violation of the False Advertising Law (Bus. & Prof. Code, §§ 17500, *et seq.*).

Page 19

**FOURTH AMENDED COMPLAINT**

49.    Plaintiffs and the other members of the Class would not have purchased the Class Furniture had they known of the deceptive nature of Defendants' untrue and/or misleading statements, or they would have paid less for the Class Furniture.

50.    The wrongful conduct alleged herein occurred, and on information and belief continues to occur, in the conduct of Defendants' business as part of a pattern or generalized course of conduct that is still perpetuated and repeated.

51.    Plaintiffs and the other members of the Class request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other members of the Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth herein.

## FOURTH CAUSE OF ACTION
## FRAUDULENT MISREPRESENTATION
### (By Plaintiffs and the Class Against all Defendants)

52.    Plaintiffs reallege and incorporate herein by reference, as though fully set forth herein, paragraphs 1 through 51, inclusive, of this complaint.

53.    Defendants knew at all material times the true nature and content of the DuraBlend® upholstery in the Class Furniture and that it in fact did not consist of leather and was not of similar quality, strength, and durability as leather, instead being of such inferior quality, strength, and durability as to not hold up to normal wear and tear and begin to peel or disintegrate within a short period of time.

54.    These facts were not known or reasonably known to Plaintiffs and the other members of the Class.

55.    At the same time, Defendants knowingly and intentionally marketed and sold the DuraBlend® upholstery, which to a reasonable consumer

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

had the appearance of leather and therefore led him/her to reasonably believe it consisted of leather and was of similar quality, strength, and durability as leather. Defendants further marketed the DuraBlend® upholstery as "blended leather," using various monikers such as "Durable", "Easy Clean", "Sophisticated Look and Feel", and "Excellent Sunlight Resistance", as well as the word "LEATHER" in its own right, further supporting the reasonableness of the reasonable consumer's belief that the DuraBlend® upholstery consisted of leather and was of similar quality, strength, and durability as leather, when in fact it was not, which was known to Defendants.

56.   As a result, Plaintiffs and the other members of the Class were deceived into purchasing furniture from Ashley with upholstery that, contrary to their reasonable beliefs and expectations, in fact did not consist of leather or was not of similar quality, strength, and durability as leather, instead being of such inferior quality, strength, and durability as to not hold up to normal wear and tear and begin to peel or disintegrate within a short period of time.

57.   Plaintiffs and the other members of the Class reasonably relied upon the completeness and veracity of Defendants' representations and would not have purchased the Class Furniture had they known that the DuraBlend® upholstery in fact did not consist of leather or was not of similar quality, strength, and durability as leather, instead being of such inferior quality, strength, and durability as to not hold up to normal wear and tear and begin to peel or disintegrate within a short period of time.

58.   Defendants' misrepresentations as alleged and described herein have caused damage to Plaintiffs and the other members of the Class in an amount to be shown at trial.

59.   Defendants acted maliciously, wantonly, oppressively, deliberately, and with the intent to defraud Plaintiffs and the other members of the Class. Defendants acted with reckless disregard of the rights of Plaintiffs and

Page 21

the other members of the Class.  Therefore, Defendants' conduct rises to a level that warrants the award of punitive damages in an amount sufficient to deter such conduct in the future.

### **PRAYER**

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1.   **On the First Cause of Action:**

    a.   For injunctive relief;

    b.   For restitution;

    c.   For compensatory damages; and

    d.   For punitive damages.

2.   **On the Second Cause of Action:**

    a.   For restitution; and

    b.   For injunctive relief.

3.   **On the Third Cause of Action:**

    a.   For restitution; and

    b.   For injunctive relief.

4.   **On the Fourth Cause of Action:**

    a.   For compensatory damages; and

    b.   For punitive damages.

///

///

///

*ARIAS SANGUINETTI STAHLE & TORRIJOS LLP*

**FOURTH AMENDED COMPLAINT**

5.   **On All Causes of Action**:

    a.   For prejudgment interest;

    b.   For reasonable attorney's fees, costs, and expenses; and

    c.   For such other and further relief as this Court deems just and proper.

Dated: July 14, 2016

**ARIAS SANGUINETTI STAHLE & TORRIJOS LLP**

By: _/s/ Mikael H. Stahle_

MIKE ARIAS
MIKAEL H. STAHLE

Attorneys for Plaintiffs

**FOURTH AMENDED COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: July 14, 2016              **ARIAS SANGUINETTI STAHLE**
                                  **& TORRIJOS LLP**


                                  By: _/s/ Mikael H. Stahle_____
                                      MIKE ARIAS
                                      MIKAEL H. STAHLE

                                  Attorneys for Plaintiffs

**FOURTH AMENDED COMPLAINT**

EXHIBIT "A"







EXHIBIT "B"







EXHIBIT "C"







EXHIBIT "D"



EXHIBIT "E"



EXHIBIT "F"



EXHIBIT "G"





EXHIBIT "H"

**DECLARATION OF SILVIA RICO**

I, Silvia Rico, state and declare as follows:

1. I have personal knowledge of the matters stated herein, except as to those matters stated upon information and belief, which I believe to be true. If called and sworn as a witness, I could and would testify truthfully and competently to the matters stated herein.

2. I am a Plaintiff in this action. I purchased the furniture of which I complain in this action at a retail store located at 7410 Carson Boulevard, Long Beach, CA 90808, in the County of Los Angeles.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed this 0th day of July, 2016, at Los Angeles, California.

_____
Silvia Rico, Declarant

**DECLARATION OF SILVIA RICO**